2005 UT 62

**Nealy W. ADAMS, Petitioner and Appellant,**

v.

**STATE of Utah, Respondent and Appellee.**

No. 20040722.

Supreme Court of Utah.

Sept. 23, 2005.

Rehearing Denied Nov. 3, 2005.

Grant W.P. Morrison, William Patrick Morrison, Salt Lake City, for petitioner.

Mark L. Shurtleff, Att'y Gen., Christopher D. Ballard, Asst. Att'y Gen., Salt Lake City, for respondent.

DURHAM, Chief Justice:

¶ 1 Nealy W. Adams appeals the district court's dismissal of his petition for postconviction relief as untimely under Utah Code section 78–35a–107(1). We reverse and remand.

## BACKGROUND

¶ 2 Adams was charged with one count of rape and one count of forcible sexual abuse, based on his alleged rape of his girlfriend's adult daughter, who had Down Syndrome. At trial, the former girlfriend testified that Adams had been drinking regularly and excessively during the period when the alleged crime occurred. She described one night when she discovered Adams, drunk and with no clothes on, coming out of her daughter's room. Adams also testified that he had at times become so drunk that he could not remember the next day what had happened the previous night. However, he denied that he could have molested his girlfriend's daughter while drunk and then failed to remember it. The jury found Adams guilty of forcible sexual abuse but acquitted him of the rape charge. Adams was sentenced to one to

fifteen years in the Utah State Prison, where he is currently an inmate.

¶ 3 After discharging his trial attorney and retaining new counsel, Adams timely appealed his conviction, but the conviction was affirmed both by the Utah Court of Appeals, *State v. Adams*, 955 P.2d 781, 788 (Utah Ct.App.1998), and by this court, *State v. Adams*, 2000 UT 42, ¶ 23, 5 P.3d 642.

¶ 4 During his incarceration, Adams again retained new counsel and filed a petition for postconviction relief on May 14, 2003. His petition claims (1) that he was not afforded his constitutional right to effective assistance of counsel at trial and on appeal, as both his previous attorneys failed to raise the defense of voluntary intoxication and failed to argue that the information set forth too broad a time period for the charged offense; and (2) that his conviction was invalid because of cumulative error. The district court found Adams's petition "not frivolous" for purposes of Utah Rules of Civil Procedure 65B(b)(5) and 65C(g)(1). However, in response to the State's motion, it dismissed Adams's petition as time-barred under the one-year statute of limitations of the Post–Conviction Remedies Act ("PCRA"), Utah Code Ann. §§ 78–35a–101 to –110 (2002). The court rejected Adams's argument that his claim met the statute's "interests of justice" exception, concluding that Adams had failed to meet his burden of proving that the exception was warranted in the context of the specific facts of his case.

¶ 5 Adams then filed a motion for reconsideration, in which he argued that the court should have looked not only to his memorandum in opposition to the State's motion to dismiss, but also to his petition for relief, in assessing whether the facts warranted application of the "interests of justice" exception. Adams argued that the court's dismissal of his petition was erroneous because, as his petition indicated, he had not learned of the possibility of raising a voluntary intoxication defense until he retained his present attorney, after his conviction was affirmed and after the one-year statute of limitations had run.

¶ 6 In further support of his position, Adams attached to his motion for reconsideration an affidavit, in which he described his efforts to procure an attorney who would examine his case to determine if there was any basis for requesting postconviction relief. According to the affidavit, Adams was unable to find such an attorney until January 2002. The State moved to strike the affidavit on the basis that Adams could have submitted the same information in his initial response to the State's motion to dismiss.

¶ 7 Following a hearing, the court granted the State's motion to strike, denied Adams's motion for reconsideration, and dismissed Adams's petition with prejudice. The court reasoned that Adams "could and should have filed his affidavit with his opposition to the State's motion to dismiss." The court further held that Adams's "failure to comprehend the legal significance of [the evidentiary facts on which his petition was based until he retained his most recent attorney] [wa]s insufficient to invoke the 'interests of justice' exception." Adams appealed the district court's dismissal of his petition, and we have jurisdiction pursuant to Utah Code section 78–2–2(3)(b) (2002).

## STANDARD OF REVIEW

¶ 8 What constitutes the "interests of justice" under Utah Code section 78–35a–107(3) is a legal determination to be made in accordance with precedent from this court. Because "legal determinations concerning the proper interpretation of [a] statute which grants the trial court discretion are reviewed for correctness," we apply a de novo standard here, *id.; see also Platts v. Parents Helping Parents*, 947 P.2d 658, 661 (Utah 1997), and conclude that the district court erred in its interpretation of the "interests of justice" exception.

## ANALYSIS

¶ 9 Adams raises three issues on appeal from the district court's dismissal of his petition: (1) whether the district court erred in refusing to excuse the untimely filing of his petition under the "interests of justice" exception to the PCRA's one-year statute of limitations, Utah Code Ann. § 78–35a–107(3) (2002), *id.* § 78–35a–107(3); (2) whether the

district court erred in striking his affidavit in support of his motion for reconsideration; and (3) whether the PCRA's statute of limitations is unconstitutional as applied to Adams's petition. In a case involving both statutory and constitutional questions, we address the statutory concerns first. *Laney v. Fairview City*, 2002 UT 79, ¶ 7, 57 P.3d 1007. We hold in this case that the "interests of justice" exception applies. We therefore need not reach the issue of whether the PCRA's statute of limitations is unconstitutional. *Hoyle v. Monson*, 606 P.2d 240, 242 (Utah 1980) ("[A] constitutional question is not to be reached if the merits of the case in hand may be fairly determined on other … issues."); *see also Laney*, 2002 UT 79 at ¶ 7, 57 P.3d 1007 ("If the district court erred in [statutory interpretation], there will be no need to address the constitutional issue before us. We therefore address the statutory interpretation question first."). In light of our analysis, we conclude that whether the district court properly struck Adams's affidavit is a moot issue.

## I. "INTERESTS OF JUSTICE" EXCEPTION TO THE PCRA STATUTE OF LIMITATIONS

¶ 10 Because Adams seeks to challenge his conviction for a criminal offense, and he "has exhausted all other legal remedies, including a direct appeal," he is directed to seek relief under the PCRA, Utah Code Ann. § 78–35a–102(1), and rule 65C of the Utah Rules of Civil Procedure. The PCRA "establishes a substantive legal remedy" for an individual whose conviction was infirm for any of a number of reasons, including the ineffectiveness of the individual's counsel. Utah Code Ann. §§ 78–35a–102(1), –104(a)–(e).

¶ 11 Unlike rule 65B (which deals with extraordinary relief writs), the PCRA imposes a statute of limitations, which provides, in

relevant part, that "[a] petitioner is entitled to relief only if the petition is filed within one year after the cause of action has accrued," *Id.* § 78–35a–107(1), but that "[i]f the court finds that the interests of justice require, a court may excuse a petitioner's failure to file within the time limitations," *id.* § 78–35a–107(3).[1]

¶ 12 For Adams, the PCRA statute of limitations began to run on August 3, 2000, which was the last date on which he could have filed a petition for certiorari in the United States Supreme Court to review this court's decision on direct appeal. *Id.* § 78–35a–107(2)(c). Adams therefore had until August 3, 2001 to file a timely petition for postconviction relief under the PCRA. His petition, filed on May 14, 2003, was clearly untimely under section 78–35a–107. Thus, as the district court recognized, Adams's only avenue for pursuing relief under the PCRA was pursuant to the "interests of justice" exception set forth in section 78–35a–107(3).

¶ 13 Adams argues that the "interests of justice" exception, whether read narrowly or broadly, applies to his case. He contends that he has both a non-frivolous claim and good reason for filing late in that he was not informed that he might assert the defense of voluntary intoxication either at trial or on appeal, and only became aware of the possibility after retaining counsel for these proceedings. The State argues that justice compels finality of judgments, that direct appeals and collateral review provide "generous opportunit[ies]" to correct errors in the conviction process; and that given the difficulties of reprosecution, the exception should only apply in "truly extraordinary circumstances" that are "beyond a petitioner's control," such as where new DNA evidence supports a claim of actual innocence. The State also points out that Adams's claims have been found merely to be non-frivolous, rather than

---

1. We note that though postconviction relief is sought in a civil proceeding (*see Julian v. State*, 966 P.2d 249, 250 n. 1) (Utah 1998), the purpose of this exception is similar to that embodied in Rule 24(a) of the Utah Rules of Criminal Procedure (rather than, as the State argues, the federal doctrine of equitable tolling). Rule 24(a) states that "[t]he court may, upon motion of a party or upon its own initiative, grant a new trial *in the* *interest of justice if there is any error or impropriety which had a substantial adverse effect upon the rights of a party.*" Utah R.Crim. P. 24(a) (2004) (emphasis added). We have stated that such a rule is an "overall expression of the need to rectify any error or impropriety in the trial process that significantly impacted a defendant's rights." *State v. Maestas*, 2002 UT 123, ¶ 54, 63 P.3d 621.

meritorious, and that even a showing of meritoriousness is insufficient to meet the exception. If meritoriousness were always sufficient, the State argues, the exception would always be met, rendering the statute of limitations meaningless.

¶ 14 We disagree with the State's analysis. We have undertaken an explanation of the meaning of the "interests of justice" exception in the context of rule 65B petitions, and we see no reason to apply a different approach here. *See Julian v. State,* 966 P.2d 249, 253–54 (Utah 1998); *Frausto v. State,* 966 P.2d 849 (Utah 1998).

¶ 15 In *Julian,* the petitioner, a convicted sex offender, applied for postconviction relief beyond the statutory limitations period. 966 P.2d at 251. The district court held that, even if the petition were untimely, it would proceed to consider the merits based on the "interests of justice" exception in the statute of limitations. *Id.* On appeal, the State argued, as it does now, that this exception should apply only under "truly exceptional circumstances" in order to lessen the burden on the state. *Id.* at 254. This court disagreed and affirmed the lower court's decision, holding that "proper consideration of meritorious claims raised in a habeas corpus petition will always be in the interests of justice." *Id.* In *Frausto,* this court approvingly cited *Julian* and concluded that trial courts "must always consider the 'interests of justice' exception . . . when a petitioner raises meritorious claims." 966 P.2d at 851.

¶ 16 Here, we conclude that the district court erred in its interpretation of the "interests of justice" exception to the statute of limitations. An analysis of what constitutes an exception in the "interests of justice" should involve examination of both the meritoriousness of the petitioner's claim and the reason for an untimely filing. We do not establish as a hard and fast rule that a petitioner must be able to demonstrate both that his claim is meritorious and that he was justified in raising it late; rather, we expect

that the district court will give appropriate weight to each of those factors according to the circumstances of a particular case. For example, a claim of actual innocence supported by DNA evidence may require virtually no justification for a late filing; on the other hand, an entirely frivolous claim would not meet the "interests of justice" exception even with the best possible excuse for late filing.

¶ 17 The present case falls between these two extremes, so we must consider both the claim itself and Adams's reasons for filing late. For the reasons explained below, we conclude that Adams's claim of ineffective assistance of counsel based on failure to argue voluntary intoxication has sufficient merit that, coupled with the indications in Adams's petition that his inability to find a postconviction attorney led to his untimely filing, it warrants reinstating Adams's petition, thus allowing him the opportunity to present this claim at a hearing. We affirm the district court's dismissal as it applies to the other two claims asserted in Adams's petition.

¶ 18 As indicated above, the district court initially dismissed Adams's petition based on Adams's failure to explain, in his memorandum in opposition to the State's motion to dismiss, why the "interests of justice" exception should apply in this case. We clarify that the court should rely not only on the petitioner's memorandum in opposition but also on the initial petition itself in evaluating the two factors we have indicated. Here, we believe that Adams's petition, together with the trial transcript indicating that both Adams and his former girlfriend testified as to his intoxication, provide a sufficient basis for our conclusion.[2]

### A. Meritorious Claim

¶ 19 We first examine the meritoriousness of Adams's claims. The district court concluded that Adams's petition was not "frivolous on its face" for purposes of summary

---

**2.** Because Adams's petition sufficiently explained that he was prevented from filing earlier because he had not previously found an attorney who informed him that voluntary intoxication was a possible defense at trial, we have no need to turn to Adams's affidavit for further support on this point. We therefore conclude that Adams's challenge to the district court's striking of his affidavit is moot, and we need not consider it further.

dismissal under rule 65C(g)(1) of the Utah Rules of Civil Procedure. Rule 65C(g)(2) defines "frivolous on its face" as when "the facts alleged do not support a claim for relief as a matter of law," or "the claims have no arguable basis in fact." Utah R. Civ. P. 65C(g)(2)(A)-(B). It follows that a petition that does have an arguable basis in fact, where the alleged facts would support a claim for relief, is not frivolous and could have sufficient merit to warrant a hearing even if untimely filed.

¶ 20 However, in determining whether the "interests of justice" exception applies, a court that has found a claim to be non-frivolous must go one step further and examine whether the claim is meritorious. The petitioner bears the burden of pointing to sufficient factual evidence or legal authority to support a conclusion of meritoriousness. While Adams's petition and the trial transcript support the meritoriousness of Adams's ineffective assistance of counsel claim based on failure to assert a voluntary intoxication defense, we find no support for Adams's claims of ineffective assistance based on failure to challenge the charged time span of Adams's alleged crime, and of cumulative error. Moreover, Adams limits his discussion on appeal to the former claim and does not mention the other two. We therefore deem the latter two claims waived and limit our discussion here to the former claim.

■ ¶ 21 Adams was convicted of forcible sexual abuse. Under Utah Code section 76–5–404(1), this crime contains two elements of intent: "a general intent to take indecent liberties or touch the anus or genitals of another without that person's permission and the specific intent or purpose to cause substantial emotional or physical pain or to sexually arouse or gratify any person." *State v. Sessions*, 645 P.2d 643, 646 (Utah 1982).

Adams claims that he was denied effective assistance of counsel because of a failure to raise the defense of voluntary intoxication to the specific intent element either at trial or on appeal.

■ ¶ 22 The defense of voluntary intoxication does not apply to general intent crimes and is only a defense to specific intent crimes if it serves to negate the mens rea element.[3] Though the burden of proof is high—mere proof of drinking or being drunk is not enough in many cases, *see State v. Wood*, 648 P.2d 71, 90 (Utah 1982); *State v. Sisneros*, 631 P.2d 856, 860 (Utah 1981)— Adams alleges that he was drunk to the point of losing the ability to comprehend his circumstances, identity, and all memory of events in his inebriated state. The trial transcript indicates that both he and his former girlfriend testified to his drunkenness at trial. Under the rule 65C(g) standard noted above, Adams's claims are not frivolous, and may be sufficiently meritorious to warrant a hearing. As this court said in *Julian*,

> [t]his does not mean that a petitioner has an unconditional right to have his petition considered fully on its merits. It means only that a petitioner has a right to have the claims set forth in his petition reviewed by a judge for determination as to whether the petition warrants further proceedings or whether it should be dismissed.

966 P.2d at 254.

### B.  Reason for Untimely Filing

¶ 23 Having determined that Adams's claim is potentially meritorious, we now examine his reasons for filing late. Adams seeks to excuse his untimely filing because he did not know the legal significance of facts in his possession due to the ineffective assistance of counsel at both his criminal trial and on appeal. His petition indicates that, de-

---

**3.** Under Utah Code section 76–2–306, voluntary intoxication "may negate the existence of a particular intent ... [and] basic rules of evidence pertaining to materiality and relevance require that a defendant have the right to adduce evidence which would tend to disprove the existence of a specific intent." *Sessions*, 645 P.2d at 646; *see also State v. Stenback*, 78 Utah 350, 2 P.2d 1050, 1053–54 (1931) (explaining that "drunkenness [does not] excuse[] crime but ...

if the mental status required by law to constitute crime be one of specific intent or of deliberation and premeditation, and drunkenness excludes the existence of such mental state, then the particular crime charged has not in fact been committed" (internal quotation omitted)); R.W. Gascayne, Annotation, *Modern Status of the Rules as to Voluntary Intoxication as Defense to Criminal Charge*, 8 A.L.R.3d 1236 (2005).

spite trial testimony regarding his intoxication, his trial counsel did not raise voluntary intoxication as an affirmative defense, nor did his attorney on direct appeal argue ineffective assistance of counsel on that basis. We disagree with the district court that an incarcerated petitioner's failure to understand the legal significance of facts is irrelevant to the analysis in the context of ineffective assistance of counsel claims. As Justice Zimmerman explained in his *Julian* concurrence, it is nearly impossible

> for even the most conscientious prisoner to discover possibly valid legal claims of error and pursue them completely. In Utah, most minimal legal research materials are lacking at the prison, and the legal services provided to assist the prisoners are grossly inadequate. Under such circumstances, it is a cruel joke to presume as the legislature has that virtually all prisoners are abusing the system when they file ... petitions more than a year after their conviction.

*Id.* at 259 (Zimmerman, J., concurring). Where a criminal defendant exercises his right to counsel at trial and on direct appeal, we decline to put the burden on individuals untrained in the law to discover the errors of those whose assistance they were constitutionally guaranteed. The State is correct when it points out that there is an important public interest in finality of judgments and that there are real costs to reprosecution where a conviction is overturned on postconviction review, but these cannot outweigh the individual rights, both substantive and procedural, which the justice system exists to protect.

4.   See *Wood*, 648 P.2d at 91 (explaining that an attorney "acts as an assistant for his client, and not as a master" (citations omitted) ).

5.   Adams does not specify whether he is arguing ineffective assistance of counsel under article I, section 6 of the Utah Constitution or the Sixth Amendment of the United States Constitution. In either case, this court applies the standard laid out in *Strickland*. *See, e.g., State v. Martinez*, 2001 UT 12, ¶ 16, 26 P.3d 203 (not specifying which constitution was the source of the ineffective assistance claim).

6.   We have interpreted Utah Code section 78–35a–104(1)(d) as allowing "a petitioner [to] raise the issues he failed to raise on direct appeal

¶ 24 One of the greatest safeguards of individual rights is effective assistance of counsel. There is no adequate substitute in our system of justice for a competent and dedicated advocate who carefully prepares and skillfully presents the arguments, defenses, and objections calculated to best protect his client's rights and interests. Because the client is the ultimate decisionmaker,[4] there are limits to what even the best of counsel can do; however, counsel should at least apprise the client of the options available and give advice based on research, experience, and sound judgment.

¶ 25 Counsel is deemed ineffective by constitutional standards[5] if his performance both falls below an objective standard of reasonableness and prejudices his client. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This is a high standard to meet, as tactical decisions such as "what witnesses to call, what objections to make, and, by and large, what defenses to interpose, are generally left to the professional judgment of counsel." *Wood*, 648 P.2d at 91; *see also State v. Tennyson*, 850 P.2d 461, 466 (Utah Ct.App. 1993) (explaining that ineffective assistance claims "rarely succeed"). Adams claims his trial and appeal attorneys fell below an objective standard of reasonableness in failing to raise an affirmative defense that, given the facts of this case, would have negated an element of the offense charged.[6] He also claims to have suffered prejudice as a result. *See State v. Brechlin*, 846 P.2d 1274, 1275 (Utah 1993) (explaining the second prong as requiring "a reasonable probability ... that

through an allegation of ineffective assistance of counsel at trial and on appeal if he was represented by the same counsel during both phases of the criminal proceedings." *Rudolph v. Galetka*, 2002 UT 7, ¶ 7, 43 P.3d 467. Here, Adams was represented by different counsel at trial and on appeal, and he raised an ineffective assistance claim, based on a different argument, in his direct appeal. To dismiss Adams's petition on that basis, however, under the specific circumstances of this case, would place the burden of discovering viable defenses on clients rather than their attorneys, defeating the operation of the interests of justice exception as we have explained it here.

but for counsel's errors, a more favorable result for the accused would have been obtained").

¶ 26 In light of the potential meritoriousness of Adams's claim of ineffective assistance of counsel based on counsel's failure to argue voluntary intoxication as an affirmative defense, we conclude that Adams's petition sufficiently justified its untimely filing to warrant consideration on its merits.

## CONCLUSION

¶ 27 We hold that Adams is entitled to a hearing on his claim for postconviction relief based on his former counsel's failure to assert a voluntary intoxication defense. We do so because Adams has a non-frivolous claim that may prove meritorious as well as good reason for filing his petition late, in that, in the absence of effective assistance of counsel, he could not be held responsible for understanding the legal significance of his intoxication as an affirmative defense to the mens rea element of forcible sexual assault. We reverse the district court's dismissal of that claim and reinstate the relevant portion of Adams's petition for postconviction relief.[7] We affirm the district court's dismissal of the other claims in Adams's petition, and we conclude that the issue regarding the affidavit Adams submitted with his motion for reconsideration is moot.

¶ 28 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.

---

7. We of course express no view on the question of whether Adams' claim, after hearing, warrants relief. We determine only that dismissal without hearing was erroneous.