**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 1, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JIM JOHNSTON,

      Petitioner - Appellant,

    v.

STATE OF UTAH; JERRY
JORGENSON, Warden,

      Respondents - Appellees.

No. 09-4021

(D. Utah)

(D.C. No. 2:04-CV-01120-DB)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**

---

Before **HARTZ**, **EBEL**, and **O'BRIEN**, Circuit Judges.

---

Jim Johnston, proceeding pro se, filed an application for relief under

28 U.S.C. § 2254 in the United States District Court for the District of Utah,

challenging his convictions for sodomy on a child, sexual abuse of a child, and

lewdness involving a child. He later filed two amended applications. The district

court denied relief, concluding that all but two of Mr. Johnston's claims were

procedurally defaulted and that the remaining two were without merit.

Mr. Johnston seeks review in this court. We deny a certificate of appealability

(COA) and dismiss the appeal. *See* 28 U.S.C. § 2253(c) (requiring COA to appeal

dismissal of § 2254 application).

## I.     BACKGROUND

On March 19, 1997, Mr. Johnston was convicted in Utah state court on one count of sodomy on a child, four counts of sexual abuse of a child, and one count of lewdness involving a child. He was sentenced to 6, 10, or 15 years' to life imprisonment on the sodomy conviction, 1 to 15 years' imprisonment on each sexual-abuse conviction, and 1 year in jail on the lewdness conviction.

Mr. Johnston sought review of his convictions and sentences in the Utah Court of Appeals. His appeal was transferred to the Utah Supreme Court under Utah Code Ann. § 78-2-2(3)(i)(1996) (now codified at § 78A-3-102(3)(i)), but was later transferred back to the Utah Court of Appeals for resolution. On December 5, 2002, the Utah Court of Appeals affirmed Mr. Johnston's convictions and sentences except that it remanded his case to the trial court for resentencing on the sodomy conviction because the trial court had to choose whether the sentence would be 6 years to life, 10 years to life, or 15 years to life. Mr. Johnston filed a petition for a writ of certiorari in the Utah Supreme Court on June 7, 2004. The court returned the petition to Mr. Johnston because it was untimely filed.

There was a delay before the trial court resentenced Mr. Johnston on the sodomy conviction. In the interim he filed a number of pro se motions with that court in which he challenged his convictions and sentences and sought copies of exhibits and jury instructions. On September 2, 2005, the trial court resentenced

Mr. Johnston to six years' to life imprisonment on the sodomy conviction. It ordered that he be provided copies of jury instructions and two videotapes but otherwise rejected his interim motions. Mr. Johnston sought review in the Utah Court of Appeals of the trial court's treatment of his interim motions. After that court affirmed the trial court on June 21, 2007, Mr. Johnston petitioned for certiorari from the Utah Supreme Court. The supreme court denied the petition on November 29, 2007.

While awaiting resentencing, Mr. Johnston filed a habeas application in federal district court on December 20, 2004. He later filed an amended application and a second amended application. Altogether his applications raised 14 grounds for relief: (1) that the Utah Supreme Court improperly transferred his case back to the Utah Court of Appeals to be decided; (2) that there was insufficient evidence to support his convictions; (3) that there had been no proper determination regarding the admissibility or sufficiency of the evidence at trial; (4) that the prosecution had not made clear how he had violated the multiple-theory crimes with which he was charged, so he could not prepare a defense; (5) that he was denied a fair trial because his motion for a change of venue was denied; (6) that he was denied a first appeal as of right because videotaped interviews of the complaining child witnesses had been lost; (7) that he was denied the right to confront the witnesses against him because the videotaped interviews of the complaining child witnesses had been lost; (8) that he was

-3-

denied due process by the trial court's delay in resentencing; (9) that he was denied due process by the trial court's delay in addressing his interim motions and its refusal to consider their merits; (10) that he was denied due process because the trial court failed to enter findings on the record when it denied his interim motions; (11) that he was denied the right to counsel because he was not represented by counsel at resentencing; (12) that he received ineffective assistance of trial counsel; (13) that he received ineffective assistance of appellate counsel; and (14) that his sodomy conviction must be vacated because the sentence imposed by the judge violated his Sixth Amendment right to a jury under *Blakely v. Washington*, 542 U.S. 296 (2004).

The district court denied relief to Mr. Johnston. It concluded that all but two of his claims were procedurally defaulted and that his two remaining claims—the ineffective-assistance-of-appellate-counsel claim and the *Blakely* claim—were without merit.

## II. DISCUSSION

A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires "a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473,

484 (2000) (internal quotation marks omitted).  In other words, an applicant must show that the district court's resolution of the constitutional claim was either "debatable or wrong."  *Id.*  If the application was denied on procedural grounds, the applicant faces a double hurdle.  Not only must the applicant make a substantial showing of the denial of a constitutional right, but he must also show "that jurists of reason would find it debatable . . . whether the district court was correct in its procedural ruling."  *Id.*  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of a case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  *Id.*

We begin with the issues disposed of on the merits by the district court.  Mr. Johnston's *Blakely* claim is that it was improper for a judge, rather than a jury, to resentence him on remand from the Utah Court of Appeals.  In *Blakely* the Supreme Court reiterated its holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000):  "'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'"  *Blakely*, 542 U.S. at 301 (quoting *Apprendi*, 530 U.S. at 490).  But this holding does not apply here, where the trial court's decision on remand was only whether to impose a minimum sentence of 6 years, 10 years, or 15 years.  The court chose the shortest minimum within Utah's indeterminate sentencing scheme.  In no way did it impose a

sentence "'beyond the prescribed statutory maximum.'" *Id.*; *see id.* at 308–09 (indeterminate sentencing schemes are constitutional).

The district court also properly dismissed on the merits Mr. Johnston's claim of ineffective assistance of appellate counsel. Mr. Johnston's application raised four grounds to support this claim. His first two grounds were that his appellate counsel had a conflict of interest (1) because his appellate counsel was unable to pay an attorney assisting him and asked Mr. Johnston for money, and (2) because his appellate counsel was representing Mr. Johnston's wife in related matters. The district court ruled that Mr. Johnston had failed to explain how he was prejudiced by either alleged conflict of interest. Mr. Johnston's third ground was that his appellate counsel had failed to object to the Utah Supreme Court's decision to transfer his case back to the Utah Court of Appeals for resolution. The district court concluded that Mr. Johnston had not shown prejudice with regard to this claim because the state supreme court had acted within its transfer authority under Utah Code Ann. § 78A-3-102(4). Finally, Mr. Johnston alleged that his appellate counsel withdrew after the denial of his direct appeal without filing a petition for a writ of certiorari. The district court disposed of this claim on the ground that Mr. Johnston had no constitutional right to counsel to pursue a discretionary state appeal. *See Ross v. Moffit*, 417 U.S. 600, 618–19 (1974). No reasonable jurist could debate the district court's rulings on all four grounds.

-6-

In this court Mr. Johnston asserts for the first time that he was prevented from filing a timely petition with the Utah Supreme Court because appellate counsel failed to inform him that he was not going to file a certiorari petition. But the state-court record belies this assertion. After his direct appeal was denied on December 5, 2002, Mr. Johnston had 30 days in which to file a certiorari petition with the Utah Supreme Court. *See* Utah R. App. P. 48(a). On January 2, 2003, he filed a motion for enlargement of time, which was granted on January 8, giving him until February 3 to file a petition. Mr. Johnston, proceeding pro se, filed an additional motion for enlargement of time on January 30, in which he stated that he had received his pleadings from appellate counsel on January 13 and that he had no funds to secure new counsel. This motion was rejected on January 31. These pleadings show that Mr. Johnston was aware, at least since January 13, that he was representing himself and that his certiorari petition was to be filed by February 3. He cannot blame his failure to file a timely petition on lack of notice from appellate counsel. In any event, we do not consider arguments that were not raised in district court. *See Coppage v. McKune*, 534 F.3d 1279, 1282 (10th Cir. 2008). No reasonable jurist could debate that Mr. Johnston's claim of ineffective assistance of appellate counsel lacks merit.

The district court resolved the remainder of Mr. Johnston's 14 claims on procedural grounds. First, it ruled that Mr. Johnston had failed to exhaust

-7-

available state-court remedies. *See* 28 U.S.C. § 2254(b)(1)(A). Mr. Johnston's pleadings in this court do not dispute this ruling.

The district court then concluded that Mr. Johnston could no longer seek relief on the claims in state court under Utah's Post-Conviction Remedies Act (PCRA), which bars review of claims that "[were] raised or addressed at trial or on appeal," Utah Code Ann. § 78B-9-106(1)(b), or that "could have been but [were] not raised at trial or on appeal," *id.* § 78B-9-106(1)(c). Accordingly, it held that the claims were procedurally defaulted. *See Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000) ("[I]f [an applicant] failed to exhaust state remedies and the court to which the [applicant] would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] the claims are considered exhausted and procedurally defaulted for purposes of federal habeas relief." (internal quotation marks omitted)).

Mr. Johnston now contends that the district court improperly applied the PCRA and that he can still seek relief on his claims in state court. But the authority he cites in support of this contention, *Adams v. State*, 123 P.3d 400 (Utah 2005), addresses only an exception for claims that would otherwise be barred by the PCRA's one-year limitations period. *Adams* does not provide an exception for claims barred by other provisions in the PCRA.

Thus, we consider Mr. Johnston's remaining 12 claims to be "exhausted and procedurally defaulted for purposes of federal habeas relief." *Thomas*, 218

F.3d at 1221. We "may not consider issues raised in a habeas [application] that have been defaulted in state court on an independent and adequate procedural ground unless the [applicant] can demonstrate cause and prejudice or a fundamental miscarriage of justice." *Id.* (brackets and internal quotation marks omitted).

Mr. Johnston's only argument before us that he has shown cause is that he was denied effective assistance of appellate counsel. But we have already ruled that he has failed to show such a denial.

Alternatively, Mr. Johnston contends that a miscarriage of justice would result if we failed to excuse his procedural default. In support of this contention Mr. Johnston complains of the prosecution's treatment of two videotaped interviews of the complaining child witnesses—asserting that the prosecution attempted to prevent the videotapes (and transcripts) of the interviews from being reviewed on appeal. The state-court record, however, reveals that he received full appellate review. In his initial appellate brief before the Utah Court of Appeals, Mr. Johnston stated that the two complaining child witnesses had been interviewed by a police investigator before trial and that videotapes of the interviews had been introduced at trial. At some point after trial the videotapes were lost and then relocated in a police officer's evidence locker. When the videotapes were found, the trial court issued an order transmitting them to the Utah Court of Appeals. Mr. Johnston's brief to the appellate court referred to the

videotapes as if they were available in the record on appeal. There is no evidence that the Utah Court of Appeals was unable to review the videotapes when resolving Mr. Johnston's appeal. Even if that court lacked transcripts of the interviews, the videotapes provided a more-than-adequate record.

In any event, a fundamental miscarriage of justice can be established only "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir. 1999) (internal quotation marks omitted). To prevail, the defendant must support his allegations of actual innocence with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Not only are the videotapes not new evidence, but the jury apparently concluded that they did not establish Mr. Johnston's actual innocence. Mr. Johnston has pointed to no other exculpatory evidence. Accordingly, we cannot discern a miscarriage of justice.

## III. CONCLUSION

We DENY Mr. Johnston's request for a COA and DISMISS the appeal. We grant Mr. Johnston's motion for leave to proceed *in forma pauperis*.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge

-10-